IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

T-MOBILE SOUTH LLC,

   Plaintiff,

     v.

DEKALB COUNTY, GEORGIA,

   Defendant.

CIVIL ACTION FILE
NO. 1:13-CV-3447-TWT

**OPINION AND ORDER**

This is a case in which the Plaintiff T-Mobile South LLC is claiming that the Defendant DeKalb County, Georgia violated the Telecommunications Act of 1996 when it refused to grant the Plaintiff a permit to construct a new cell tower. It is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 50] and the Defendant's Motion for Summary Judgment [Doc. 52]. For the reasons set forth below, the Plaintiff's Motion for Summary Judgment [Doc. 50] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. 52] is GRANTED.

**I. Background**

T-Mobile claims that it is currently unable to provide reliable wireless coverage to a particular area of DeKalb County, and that it needs to construct an additional cell

tower to rectify this problem.[1] Because there is no pre-existing structure in the area that would meet the required specifications,[2] T-Mobile's engineers investigated several locations for the new cell site.[3] They ultimately decided that Lakeside High School's property would be an ideal location.[4] On October 10, 2012, T-Mobile entered into a leasing agreement with the DeKalb County School District.[5] Under this agreement, the School District leased a parcel of land on Lakeside High School's property to T-Mobile for the construction of a cell tower.[6] The agreement also allows the School District to install lighting equipment on the tower.[7]

On March 29, 2013, T-Mobile submitted an application to the DeKalb County Department of Planning & Sustainability ("Planning Department") for a permit to build the cell site.[8] On April 26, 2013, the Land Development Division for DeKalb County – via e-mail – requested additional information from Whitney Gill, a specialist

---

[1] Pl.'s Statement of Facts for Pl.'s Mot. Summ. J. ¶ 4.

[2] Id. ¶ 12.

[3] Id. ¶ 11.

[4] Id. ¶ 13.

[5] Id. ¶ 17.

[6] Id. ¶ 17.

[7] Id. ¶ 20.

[8] Id. ¶ 21.

who helped T-Mobile prepare its permit application.[9] On June 13, 2013, Gill responded to this request by delivering additional documents.[10] Then, on September 13, 2013, T-Mobile received an e-mail with an unsigned land development permit attached.[11] The e-mail indicated that T-Mobile's submitted plans had been approved, and that it needed to have three copies of the permit signed by the School District before the permit could be presented to the Planning Department Representative for final signatures.[12] However, on September 16, 2013, the Defendant's interim-CEO Lee May wrote a letter to the Director of the Planning Department "directing [him] to consider T-Mobile's permit application incomplete until it demonstrates compliance with applicable zoning regulations."[13] A few days later, T-Mobile received a letter which stated in part:

> Due to the policy of the interim CEO, it has been determined that T-Mobile's application is "incomplete" and must follow the county's established zoning requirements.

---

[9] Def.'s Statement of Additional Material Facts for Pl.'s Mot. Summ. J. ¶ 1.

[10] Id. ¶ 2.

[11] Def.'s Statement of Facts for Def.'s Mot. Summ. J. ¶ 7.

[12] Id.; Pl.'s Statement of Facts for Pl.'s Mot. Summ. J. ¶ 25.

[13] Pl.'s Statement of Facts for Pl.'s Mot. Summ. J. ¶ 27.

While it is true that property owned by a government agency can be exempt from zoning laws if the property is used for a governmental purpose; it does not appear that the proposed T-Mobile tower meets this requirement. Also, this school property is currently zoned Residential and would require rezoning to a Non-residential zoning district in order to allow for the construction of a cell tower.[14]

T-Mobile brought suit against the Defendant DeKalb County under the Telecommunications Act, claiming that (1) the Defendant denied T-Mobile's permit request without substantial evidence in violation of 47 U.S.C. § 332(c)(7)(B)(iii), (2) the Defendant failed to respond to T-Mobile's permit request "within a reasonable period of time" in violation of 47 U.S.C. § 332(c)(7)(B)(ii), and (3) the Defendant is effectively "prohibiting the provision of personal wireless services" in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II). In addition, the Plaintiff requests an injunction requiring the Defendant to grant the requested permit. Both parties now move for summary judgment.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[15] The court should view

---

[14]    Def.'s Statement of Facts for Def.'s Mot. Summ. J. ¶ 9.

[15]    FED. R. CIV. P. 56(c).

the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[16] The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.[17] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[18] A "mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[19]

### III. Discussion

**A. Counts I (Substantial Evidence) and III (Effective Prohibition)**

The Defendant argues that Counts I and III are not ripe because the Defendant has not rendered a final decision as to whether the cell tower may be built. The Defendant points out that T-Mobile may still be allowed to construct the cell tower despite the Planning Department's determination that the local zoning regulations apply to the proposal.[20] Article III of the Constitution "limits the jurisdiction of the

---

[16] Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

[17] Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

[18] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

[19] Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir.1990).

[20] Def.'s Resp. Br., at 4-6.

federal courts to actual cases or controversies and requires [the Court] to consider whether a plaintiff's claims are ripe."[21] The question of ripeness "turns on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."[22] Essentially, the Court is determining whether "the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking."[23] The Telecommunications Act effectively codifies the ripeness requirement by providing a cause of action to "[a]ny person adversely affected by any *final action* . . . by a State or local government or any instrumentality thereof that is inconsistent with [47 U.S.C. § 332(c)(7)]."[24] Thus, the Court must determine whether the Defendant has engaged in a "final action" denying the Plaintiff's request to construct a cell tower.

In interpreting the term "final action," the First Circuit's holding in Omnipoint Holdings, Inc. v. City of Cranston[25] is instructive: "A final action . . . by a . . . local

---

[21] Beaulieu v. City of Alabaster, 454 F.3d 1219, 1227 (11th Cir. 2006).

[22] Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 201 (1983) (internal quotation marks omitted).

[23] Digital Properties, Inc. v. City of Plantation, 121 F.3d 586, 589 (11th Cir. 1997) (internal quotation marks omitted).

[24] 47 U.S.C. § 332(c)(7)(B)(v) (emphasis added).

[25] 586 F.3d 38 (1st Cir. 2009).

government or any instrumentality . . . must be one that marks the consummation of the *instrumentality's* decisionmaking process."[26] The First Circuit reasoned that "we assume Congress knew the content of background law when legislating," and that a final agency action generally means a "final determination in a case by an administrative agency; that is, whether the agency rendered its *last word* on the matter."[27]

Here, T-Mobile has failed to establish that the Defendant conclusively denied T-Mobile's request for a permit. The Planning Department's conclusion – that local zoning laws apply to, and prohibit, T-Mobile's proposed cell site – simply means that T-Mobile must now follow the applicable zoning procedure in order to secure approval. For example, the letter T-Mobile received indicated that T-Mobile could apply to have the land for the proposed cell site "rezoned." Alternatively, in the event that T-Mobile's petition for rezoning is denied, or if T-Mobile believes that the zoning regulations do not apply, it may file an appeal with the Board of Zoning Appeals ("BZA") and plead its case.[28] Under County Ordinance § 27-912:

> The zoning board of appeals shall have the power and duty to hear and decide appeals where it is alleged by the appellant that there is error in any . . .

---

[26] Id. at 47 (emphasis in original).

[27] Id. at 46 (internal quotation marks omitted) (emphasis added).

[28] Def.'s Mot. Summ. J., at 10.

decision made by an administrative official *based on* or made in the enforcement of the zoning ordinance.[29]

Until a rezoning request is denied, and the BZA rejects T-Mobile's contentions, the Defendant has not "rendered its last word on the matter."

The Seventh Circuit reached a similar conclusion in <u>Sprint Spectrum L.P. v. City of Carmel, Indiana</u>.[30] There, Sprint entered into a lease with an Indiana resident allowing Sprint to place an antenna on his property.[31] Sprint applied for a permit to construct the antenna, which was initially granted and then revoked shortly after.[32] Sprint appealed the revocation to the Board of Zoning Appeals ("BZA"), which concluded that "the use for which the [permit] was granted . . . is not a Permitted Use under the . . . [relevant zoning ordinances]," and so a special use permit was required.[33] Sprint then filed suit in federal court, and argued that "the local zoning ordinances do not require it to seek a special use permit."[34] The district court

---

[29] Def.'s Mot. Summ. J., Ex. E.

[30] 361 F.3d 998 (7th Cir. 2004).

[31] <u>See id.</u> at 1000.

[32] <u>See id.</u>

[33] <u>Id.</u> (internal quotation marks omitted).

[34] <u>See id.</u>

dismissed the action after concluding that Sprint's claim was not ripe because there had been no "final action."[35] The Seventh Circuit agreed:

> The BZA's decisions do not completely foreclose Sprint from establishing wireless telecommunications facilities at the [relevant] site. In fact, those decisions merely map a procedural route that Sprint must take in order to proceed with its project. It must submit a plan to the commission and apply for a special use permit, neither one of which Sprint has done. Indeed, until Sprint is told definitely whether or not it is permitted to install an antenna . . . it is mere speculation whether it even has an injury to complain of. . . . The possibility remains that the city . . . will still approve Sprint's project. As the Supreme Court has recognized, local zoning authorities are flexible institutions that may give back with one hand what they have taken with the other. . . . If that is indeed the outcome, there would be no case or controversy to adjudicate because the BZA's action would be favorable to Sprint. Although Sprint at some point might have a mature claim, for now it must allow the local authorities to act with finality before pursuing a claim in federal court.[36]

In this case, there is a stronger argument for finding that T-Mobile's claim is not ripe for review. Unlike the plaintiff in Sprint Spectrum, T-Mobile has not even pursued an appeal before the local BZA.

In response, T-Mobile first argues that its proposed cell site is exempt from the zoning regulations, and so it has been improperly diverted into the zoning process. Specifically, T-Mobile asserts that the cell tower would be constructed on government property and serve a government purpose, and so it is exempt from the zoning

---

[35] See id. at 1001.

[36] Id. at 1004.

regulations under Georgia law. This is not responsive. For the "final action" analysis, it is immaterial whether the zoning regulations have been rightfully applied. The question is simply whether the application of the zoning regulations operates as a conclusive denial of T-Mobile's permit request. If T-Mobile may still ultimately receive a permit – e.g., through a successful appeal to the BZA – then there has been no "final action."

T-Mobile then argues that it cannot appeal the Planning Department's decision to the BZA, and so the Planning Department's decision was a "final action." In support, T-Mobile argues that the BZA has no jurisdiction to hear its appeal because the Planning Department's decision was not a "zoning decision." T-Mobile claims that the Defendant acknowledged this much in its Brief. But the Planning Department sent T-Mobile an e-mail indicating that "T-Mobile's application [is] 'incomplete' and must follow the county's *established zoning requirements*" and that "[the] school property is currently *zoned Residential* and would require rezoning to a Non-residential zoning district in order to allow for the construction of a cell tower."[37] Thus, regardless of any inconsistent assertion made by the Defendant elsewhere in its Brief, the Planning Department's decision was obviously a "decision . . . *based on* or made in enforcement of [a] zoning ordinance," thus giving the BZA jurisdiction to entertain

---

[37] Def.'s Mot. Summ. J., Ex. F (emphasis added).

an appeal by the Plaintiff. Accordingly, Counts I and III of the Plaintiff's Complaint are not ripe for resolution.

### B. Count II (Shot Clock Violation)

T-Mobile claims that the Defendant impermissibly failed to act on its permit request within a reasonable period of time. Under the Telecommunications Act, a "State or local government or instrumentality thereof shall act on any request for authorization to . . . construct . . . personal wireless service facilities within a reasonable period of time after the request is duly filed . . . taking into account the nature and scope of such request."[38] The Federal Communications Commission has determined that "[a] 'reasonable period of time' under § 332(c)(7)(B)(ii) . . . is presumptively (but rebuttably) 90 days to process a collocation application (that is, an application to place a new antenna on an existing tower) and 150 days to process all other applications."[39] The FCC's interpretive ruling, however, provided "for further adjustments to the presumptive deadlines in order to ensure that the timeframes accommodate certain contingencies that may arise in individual cases, including . . . where the application review process has been delayed by the applicant's failure to

---

[38]  47 U.S.C. § 332(c)(7)(B)(ii).

[39]  City of Arlington, Tex. v. F.C.C., 133 S. Ct. 1863, 1867 (2013).

submit a complete application or to file necessary additional information in a timely manner."[40]

T-Mobile claims that the Defendant took more than 150 days to act on T-Mobile's permit request. Specifically, T-Mobile claims that it filed its application on March 29, 2013, and that it received the Planning Department's decision on September 18, 2013[41] – roughly 170 days later. However, the FCC has stated that "when applications are incomplete as filed, the timeframes do not include the time that applicants take to respond to State and local governments' requests for additional information."[42] Here, the Defendant's Land Development Division sent T-Mobile an e-mail on April 26, 2013 – 28 days after T-Mobile submitted its application – indicating that the Defendant needed more information.[43] T-Mobile responded to this

---

[40] In the Matter of Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B) to Ensure Timely Siting Review and to Preempt Under Section 253 State and Local Ordinances That Classify All Wireless Siting Proposals as Requiring a Variance, 24 F.C.C. Rcd. 13994, 14010 (2009).

[41] Def.'s Statement of Facts for Def.'s Mot. Summ. J. ¶ 9.

[42] In the Matter of Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B) to Ensure Timely Siting Review and to Preempt Under Section 253 State and Local Ordinances That Classify All Wireless Siting Proposals as Requiring a Variance, 24 F.C.C. Rcd. 13994, 14014 (2009).

[43] Def.'s Statement of Facts for Pl.'s Mot. Summ. J. ¶ 1.

request on June 13, 2013 – 48 days later.[44] Consequently, the "shot clock" was tolled for at least 48 days, and so the deadline was October 10, 2013. Because the Planning Department issued its decision before that date, the Defendant did not violate 47 U.S.C. § 332(c)(7)(B)(ii).

In response, T-Mobile argues that the shot clock was not tolled because the requested information was "unnecessary."[45] In support, T-Mobile claims that the Defendant "asked T-Mobile to . . . embed copies of all approved special exemption permit[s] from the zoning board of appeals . . . [but the proposed cell site] is exempt from local zoning regulations, so no zoning permits were required."[46] T-Mobile also claims that many "items on the [Defendant's] checklist required nothing more than minor revisions to T-Mobile's construction drawings (i.e., adding a legend for erosion control standard codes, detailing the location of a silt fence, including a notation regarding concrete wash-out, and providing a landscape plan) . . . [but] [n]one of these items was essential to the . . . consideration of T-Mobile's permit application."[47] This argument is unpersuasive. T-Mobile assumes – with no support – that the shot clock

---

[44] Id. ¶ 2.

[45] Pl.'s Resp. Br., at 23.

[46] Pl.'s Resp. Br., at 24.

[47] Pl.'s Resp. Br., at 24.

is tolled *only* if the requested information is ultimately found necessary to reach the correct decision. The FCC's interpretive ruling does not frame the exception this narrowly. As noted, the FCC stated – in general terms – that when an application is incomplete, the timeframe does not include "the time that applicants take to respond to State and local governments' requests for additional information."[48] Here, the Defendant claimed that additional information was required to form a complete permit application, and T-Mobile submits no evidence indicating otherwise. That the Defendant may have been able to render a decision without these documents is immaterial. It is entirely possible that a complete application may include information that will ultimately prove unnecessary. Accordingly, the Defendant is entitled to judgment as a matter of law on Count II.

## IV. Conclusion

For these reasons, the Court DENIES the Plaintiff's Motion for Summary Judgment [Doc. 50] and GRANTS the Defendant's Motion for Summary Judgment [Doc. 52].

---

[48] In the Matter of Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B) to Ensure Timely Siting Review and to Preempt Under Section 253 State and Local Ordinances That Classify All Wireless Siting Proposals as Requiring a Variance, 24 F.C.C. Rcd. 13994, 14014 (2009).

SO ORDERED, this 22 day of October, 2014.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge